# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 23-CV-10014-GAYLES/TORRES

CATHERINE WHITNEY,

    *Plaintiff,*

v.

DOCTORS SPA AT DUVAL SQUARE, INC.
and ADRIENNE CURRAN, M.D.,

    *Defendants.*

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

This cause comes before the Court on Defendants, Doctors Spa at Duval Square, Inc. and Adrienne Curran, M.D.'s ("Defendants") motion to enforce a settlement agreement against Plaintiff, Catherine Whitney ("Plaintiff"). Plaintiff (untimely)[1] responded to the motion on December 4, 2023 [D.E. 55] to which Defendants replied on December 11, 2023. [D.E. 57]. Accordingly, the motion is ripe for disposition.[2] After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, we recommend that Defendants' motion be **DENIED**.

---

[1] While we acknowledge—and do not excuse—Plaintiff's untimely response, we will nonetheless exercise our discretion to consider it because of the dispositive nature of this motion.

[2] The Honorable Darrin P. Gayles referred this motion to the Undersigned Magistrate Judge for disposition on November 16, 2023. [D.E. 53].

1

## I.     BACKGROUND

This dispute hinges on whether Plaintiff and Defendants agreed to terms to settle this dispute, such that the Court should enforce the parties' ostensible settlement agreement.

On October 25, 2023, the parties filed their Notice of Settlement. [D.E. 46]. In theory, the parties had agreed to settle Plaintiff's FLSA claim. But on November 8, 2023, Plaintiff moved to reopen the case arguing that in fact, the parties were not able to form a settlement agreement.

From Defendants' perspective, all material terms have been agreed to by the parties, and therefore the agreement between the parties—even if technically incomplete—should be enforced. Specifically, Defendants argue that the amount to be paid for Plaintiff's FLSA claim and the identity of the claim to be compromised have been agreed to. Accordingly, even if disputes exist outside of these material terms (i.e., attorneys fees and a carve-out provision), those disputes should not, and cannot, obstruct settlement of the FLSA claim. Accordingly, Defendants argue that, because all parties have agreed to the resolution of the FLSA claim, the settlement should be enforced. And if ancillary disputes still remain, argue Defendants, then Plaintiff can file a future lawsuit.

Plaintiff, meanwhile, characterizes the parties' agreement (or in Plaintiff's view, lack thereof) differently. In particular, Plaintiff asserts that at all times—consistently and incessantly—she conditioned her agreement to resolve the FLSA claim on the parties agreeing on all terms. In other words, until all terms were agreed

upon, no terms were agreed upon. Additionally, Plaintiff argues that, towards the end of the negotiations, both parties failed to agree as to a carve-out provision that Plaintiff requested for an unfiled qui tam claim. Therefore, because Plaintiff and Defendants (undisputedly) did not agree to include that carve-out provision in the settlement agreement (among other ancillary terms), which was an essential and material term to the Plaintiff, no agreement was ever consummated.

## II.   ANALYSIS

"The construction and enforcement of settlement agreements are governed by the contract law of the forum state." *Clough Mktg. Servs., Inc. v. Main Line Corp.*, 313 F. App'x 208, 211 (11th Cir. 2008). In Florida, "'[t]o compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element.'" *Sands v. Wagner & Hunt, P.A.*, No. 09-60557-CIV, 2009 WL 2730469, at *2 (S.D. Fla. Aug. 28, 2009) (quoting *Spiegel v. H. Allen Homes, Inc.*, 834 So.2d 295, 297 (Fla. 4th DCA 2003)). To that end, "[t]he party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement." *Spiegel*, 834 So. 2d at 297. Under Florida law, "the definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." *Nicholas v. Hartford Ins. Co. of the Midwest*, 83 So. 2d 217, 220 (Fla. 1st DCA 2003).

So, we must resolve whether the parties ever expressed unconditional mutual assent to the terms of the settlement agreement. Then, if it appears the parties expressed mutual assent as to certain terms but not others (e.g., as to the value of

3

the FLSA claim but not to the carve-out provision or attorney's fees), we must determine whether we must enforce the agreement.

### A. *Whether the parties expressed mutual assent*

"It is axiomatic under Florida contract law 'that the acceptance of an offer that results in an enforceable agreement must be (1) absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly stated within the offer.'" *Vision Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441, 444 (Fla. 3d DCA 2019) (quoting *Trout v. Apicella*, 78 So.3d 681, 684 (Fla. 5th DCA 2012)). More specifically, "[a]n acceptance of a settlement offer will be effective to create a binding settlement only if it is absolute, unconditional, and identical with the terms of the offer." *Hanson v. Maxfield*, 23 So. 3d 736, 739 (Fla. 1st DCA 2009).

The Court is unable to find any point in time at which Plaintiff "absolute[ly], unconditional[lly], and identical[ly]" assented to settlement terms with Defendants. *Id*. Upon review of the exhibits filed by both parties, it appears that, throughout the entire negotiation process, Plaintiff's counsel insisted that Plaintiff required agreement to *all* terms before Plaintiff would agree to *any* terms.

Defendants—who bear the burden of showing that Plaintiff assented to an enforceable agreement—rely on the communications between counsel as their primary evidence. But in fact, these negotiations directly undermine Defendants' position that an agreement was ever in place. For example, in the email negotiations presented by Defendants, Plaintiff's counsel attached a "revised" version of the

4

parties' draft settlement agreement with her edits. In response, Plaintiff's counsel clearly states that he "will draft a joint motion to approve the settlement *once we agree on the settlement terms*." [D.E 52-1] (emphasis added).

Similarly, in another email provided by Defendants, Plaintiff's counsel provides a counteroffer and once again states that the counteroffer is "contingent upon … all settlement terms." [D.E. 52-2 at 10–11]. Shortly after, Plaintiff's counsel once again informed Defendants' counsel that the "offer is also contingent on the dismissal with prejudice of the counterclaim and the agreement of all settlement terms by the parties." [*Id.* at 9]. Then, once again, Plaintiff's counsel made clear that its new counteroffer was "further contingent on the Parties' agreement on all settlement terms." [*Id.* at 6]. Familiarly, Plaintiff's counsel thereafter reinforced that "the settlement is still contingent upon the Parties' agreement on all settlement terms." [*Id.* at 5].

A few days later, the negotiations ended when Plaintiff's counsel informed Defendants' counsel that Plaintiff required a "carve-out for the qui tam suit that has been previously disclosed." [*Id.* at 2]. In response, Defendants' counsel made clear that Defendants "cannot agree to the carve outs." [*Id.* at 1].

Defendants argue that because Plaintiff agreed to all "material" terms (i.e., the value of Plaintiff's FLSA claim), the agreement should be enforced as to those material terms. But the parties' communications are clear: Plaintiff's agreement to resolve its FLSA claim was always contingent on agreement to *all* terms, which Plaintiff's counsel made incessantly apparent. As expressed in the parties'

5

communications, it was not worth it to Plaintiff to settle her FLSA claim if that settlement did not guarantee the dismissal of Defendants' counterclaim and a carve-out from the general release provision.

Therefore, because all terms were not agreed upon—including the scope of the release—it follows that the value of the FLSA claim was also not agreed upon. *See Cheverie v. Geisser*, 783 So.2d 1115, 1119 (Fla. 4th DCA 2001) ("Where the language of a release is disputed and the parties fail to reach an agreement as to the character, nature, or type of release to be used, an essential element of the agreement is not established."); *Pena v. Fox*, 198 So. 3d 61, 64 (Fla. 2d DCA 2015) (holding that no settlement agreement existed where the ostensible acceptance did not mirror the offer; specifically, because "Mr. Fox's proposed acceptance would release additional parties, Mr. Fox's agents and employees, which Ms. Pena's offer would not. His acceptance did not mirror her offer."); *Vision Palm Springs, LLLP*, 272 So. 3d at 446–47 ("While the parties engaged in preliminary negotiations, there was no enforceable settlement agreement because there was no assent by all of the parties to an agreement that was sufficiently specific and mutually agreeable as to every essential element."); *Roland Corp. v. inMusic Brands, Inc.*, No. 17-CV-22405, 2020 WL 10818391, at *4 (S.D. Fla. Sept. 28, 2020) (holding that no enforceable settlement agreement existed where the movant "ha[d] not met its burden to show that the Parties entered into an enforceable settlement agreement" because certain conditions required for the agreement had not been satisfied).

The facts here mirror those in *D.B.C. Corp. v. Nucita Venezolana, C.A.*, No. 18-25225-CIV, 2020 WL 8872096 (S.D. Fla. June 15, 2020). There, the plaintiff sought to enforce a settlement agreement and used as evidence email exchanges and communications between the parties. *Id.* at *2. Absent from those email exchanges, the Court held, was "the basic premise of any kind of agreement—acceptance by the offeree." *Id.* This Court noted, for example, that the defendants' counsel stated that while he agreed in principle that the parties could agree to settle, "immediately following that alleged acceptance was the following contingency: 'provided the final agreement reflects our final understanding we should have a deal in place.'" *Id.* Accordingly, because "any near assent by Defendants' counsel in the e-mails was accompanied by contingent language," it demonstrated that "only an agreement to agree had been reached." *Id.*

Here, quite similarly, we have clear and consistent reservations by Plaintiff to enter into any agreement until all terms were agreed upon. Throughout the entire negotiations, Plaintiff's emails "w[ere] accompanied by contingent language." *Id.* Consequently, at no point in time did Plaintiff express "absolute and unconditional" assent "identical with the terms of the offer." *Vision Palm Springs, LLLP*, 272 So. 3d at 444.

Additionally, Defendants' reliance on *Enqriquez v. Williams*, 2010 WL 3608463 (M.D. Fla. Aug. 20, 2010), is unpersuasive because that case is quite distinguishable. In that case, "the evidence … clearly demonstrate[d] that Plaintiff knowingly and voluntarily entered into the settlement agreement in this case." *Id.* at *2. In fact,

7

there was "no question that Plaintiff mutually assented to the essential terms of the settlement agreement." *Id*. The plaintiff even stated that he had "agreed to settle the case with defendants' for one thousand dollars" and was "going through with the settlement as [he] agreed." *Id*. Here, conversely, we simply have no evidence that Plaintiff expressed unconditional assent to the terms proposed by Defendants and in fact, have abundant evidence that Plaintiff did *not* unconditionally agree. In *Enriquez*, the plaintiff unequivocally agreed to settle and then sought to change his mind; here, there was simply no agreement to settle as evidenced by the parties' communications. *Enriquez*, therefore, is inapposite.

The same goes for Defendants' reliance on *Sands v. Wagner & Hunt, P.A.*, 2009 WL 2730469 (S.D. Fla. Aug. 28, 2009). There, the defendant's counsel sent an email to the plaintiff's counsel with a settlement offer. *Id*. at *1. The defendant's counsel unmistakably and unconditionally responded: "Wagner & Hunt, P.A. and Cavalry *accept your offer*." *Id*. (emphasis in original). After accepting this offer, the defendant sought to undo its acceptance to negotiate a confidentiality provision. *Id*. Here, unlike in *Sands*, Plaintiff never offered to Defendants an unconditional and absolute acceptance (evidenced by Defendants' exhibits).

Further bolstering our conclusion is Defendants' counsel's statement on November 2, 2023: "My clients cannot agree to the carve outs [i.e., the proposed release provision]. Let me know if those terms are essential and if so, we can advise the court and get the litigation back on track." [D.E. 52-2]. Plaintiff's counsel then responded that "the carve-out is a material term for my client," and that "I agree that

8

we should get the litigation back on track." [D.E. 52-2]. Clearly and unequivocally, then, neither party can meaningfully assert that mutual assent existed, at least as to the scope of the release provision. Or, in Defendants' counsel's own words, the parties "cannot agree" as to the scope of the release provision. [*Id.*]. The Court struggles to deduce an enforceable settlement agreement from these communications.

Accordingly, because Defendants fail to carry their burden of showing mutual assent to any terms, let alone all essential terms, Defendants' motion to enforce the settlement agreement should be denied. *See SFR Servs. LLC v. Arnesen Webb, PLLC*, No. 23-CV-81079-RLR, 2024 WL 306234, at *4 (S.D. Fla. Jan. 16, 2024), *report and recommendation adopted*, No. 23-CV-81079, 2024 WL 307616 (S.D. Fla. Jan. 26, 2024) (denying motion to enforce settlement agreement where "Defendants ha[d] not met their burden of showing that [the plaintiff] assented to all material terms of the alleged agreement"); *Ribich v. Evergreen Sales & Serv., Inc.*, 784 So. 2d 1201, 1203 (Fla. 2d DCA 2001) (rejecting argument that a settlement agreement was enforceable where the plaintiff, instead of assenting to the terms of the defendant's offer, "proposed an additional settlement condition" and the defendant rejected that condition); *Gaines v. Nortrust Realty Mgmt., Inc.*, 422 So. 2d 1037, 1040 (Fla. 3d DCA 1982) (holding that no enforceable settlement agreement existed because "no meeting of the minds as to an essential element of the agreement existed"; specifically, the parties could not agree as to the scope of a release).

### B. *Whether Plaintiff "Co-Mingled" Claims*

Defendants separately argue that the reason no binding agreement was reached is because Plaintiff's counsel is "holding hostage" the FLSA claim for the sake of his attorney's fees. Accordingly, Defendants argue, the Court should enforce the portion of the proposed settlement agreement that pertains to the value of the FLSA claim and leave for later the resolution of Plaintiff's attorney's fees.

On balance, the Court understands Defendants' argument that in FLSA cases attorney's fees may be settled separately from the FLSA claim itself. But here, that is irrelevant—the parties *did not agree to resolve the FLSA claim*. As discussed previously, by both parties' admissions, the scope of the release provision is disputed to the point where both parties insisted that they "advise the court [of their failure to settle] and get the litigation back on track." [D.E. 52-2]. And consistently, Plaintiff conditioned the settlement of its FLSA claim upon requirements that the parties ultimately did not agree upon.

Additionally, the caselaw Defendants rely on in support of this argument is unpersuasive; in each of those cases, the parties jointly proposed to the court a settlement agreement (i.e., no dispute existed as to whether the parties agreed to terms). For example, in *Bonetti v. Embarq Management Co.*, both parties agreed to propose a settlement agreement to the court, which included undisputed agreements as to compensation, the release provision, and attorney's fees. 715 F. Supp. 2d 1222, 1224 (M.D. Fla. 2009). Here, conversely, the parties plainly disagree on both the

10

release provision and fees, as well as (at the time of negotiations) the dismissal of Defendants' counterclaim.

Defendants' cherry-picked iteration of *Bonetti* also ignores the opinion's acknowledgment that "[a]bsent evidence to the contrary … the Court should assume that the plaintiff's lawyer has abided by his ethical obligations and avoided the temptation to place his own interest ahead of his client's." *Id.* Critically, Defendants offer absolutely no evidence to persuade the Court of its argument that Plaintiff's counsel has "elevat[ed] his financial interests above those of his client." [D.E. 52 at 9].

Defendants improperly paint the negotiations as if Plaintiff's attorney's fees are the only issue in dispute and are being used as an unethical roadblock to settlement. [*Id.*] ("Plaintiff's counsel rejected this offer … since it did not include a resolution of his attorney's fees claim—thus elevating his financial interests above those of his client."). But this ignores Defendants' own exhibits, in which Plaintiff consistently avers that until all terms are agreed upon, no settlement can be had (whether that term be the release provision, attorney's fees, and/or the dismissal of Defendants' counterclaim). On balance, the parties simply failed to reach an enforceable agreement; hence, the Court is not persuaded by Defendants' effort to pin that failure on Plaintiff's counsel's effort to hold Plaintiff's claim "hostage" to secure his fees.

Defendants also take issue with Plaintiff's requirement that the settlement agreement include a "carve-out" for Plaintiff's unfiled qui tam claim and dismissal of

11

Defendants' counterclaim. Specifically, Defendants argue that Plaintiff impermissibly "comingles" the FLSA claim with the counterclaim and the unfiled qui tam claim (as well as attorney's fees). To that end, Defendants argue that courts view unfavorably "side deals" included in FLSA settlement agreements. [D.E. 52 at 6].

But even if we were to accept that legal principle, Defendants do not demonstrate that this is a proper context in which to apply that principle. For example, in the primary case upon which Defendants rely, the court specifically references a situation where "an employee signs a pervasive release as part of a 'side deal'" to an FLSA settlement. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010). It then states that "an employer is not entitled to use an FLSA claim … to leverage a release from liability unconnected to the FLSA." *Id*. The court's concern was that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer." *Id*.

This case presents a stark contrast from a pervasive, broad release advocated for by an employer. For one, the *Moreno* court plainly takes issue with employers using FLSA settlements as a vehicle to settle unrelated claims. Here, we have an employee—not an employer—seeking a release. Additionally, Plaintiff is not seeking the "pervasive, broad" release sought by the employer in *Moreno*; rather, Plaintiff seeks a hyper-specific carve-out provision.

And, moreover, even if the Court was persuaded by this argument, it still would not change the fact that Defendants have not carried their burden of showing that the parties mutually assented to settlement terms for the FLSA claim. As

12

explained above, such assent is an absolute requirement for enforcing a settlement agreement.

### III. CONCLUSION

For the reasons set forth above, we recommend that Defendants' motion to enforce the proposed settlement agreement [D.E. 52] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of April, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge